IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,                                            Civil Action No. 2:13-cv-14076
                                                       Hon. George Caram Steeh
Plaintiff,

v.

THE PINES OF CLARKSTON, INC.,

Defendant.
_____/

**<u>PLAINTIFF EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION'S BRIEF IN OPPOSITION TO DEFENDANT'S
MOTION FOR SANCTIONS UNDER
FED. R. CIV. P. 11</u>**

## Table of Contents

Table of Authorities............................................................................... iii

Statement of Questions Presented ..........................................................v

Overview ...................................................................................................1

I.    Introduction .......................................................................................1

II.   The Commission's Suit Does Not Abuse the Judicial Process. .........3

III.  The Pines of Clarkston is Part of an Integrated Enterprise. ............5

IV.  Pines Fired Holden Because of Her Disability, Not Medical Marijuana Use, and Its Current Policy Argument is a Pretext. ........9

V.   Conclusion........................................................................................ 11

Index of Exhibits .................................................................................... 13

# Table of Authorities

**Page(s)**

**CASES**

*Armbruster v. Quinn*, 711 F.2d 1337-38 (6th Cir. 1983) ........................... 5

*Business Guides, Inc. v. Chromatic Communications Enters., Inc.*, 498 U.S. 533, 111 S.Ct. 922, 112 L.Ed.2d 1140 (1991) ....................... 4

*Cicero v. Borg-Warner Automotive, Inc.*, 280 F.3d 579 (6th Cir. 2002) ............................................................................................... 11

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990) ........................... 3

*Harrell v. Del. N. Cos. & Sportservice Food Serv.*, No. 11-15557, 2012 U.S. Dist. LEXIS 143031 (E.D. Mich. Oct. 3, 2012) .................... 5

*Holling v. United States*, 1995 WL 871257 (E.D. Mich.1995) .................. 4

*Jackson v. Law Firm of O'Hara, Ruberg, Osborne and Taylor*, 875 F.2d 1224 (6th Cir.1989) ................................................................... 4

*Kenna v. United States Dep't of Justice*, 128 F.R.D. 172 (D.N.H.1989) ..................................................................................... 4

*Knestrick v. IBM Corp.*, 945 F. Supp. 1080 (E.D. Mich. 1996) ................. 4

*Safe-Strap Co., Inc. v. Koala Corp.*, 270 F.Supp.2d 407 (S.D.N.Y. 2003) ................................................................................................. 3

*Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990 (6th Cir. 1997) .......................................................................................... 5

*Tahfs v. Proctor*, 316 F.3d 584 (6th Cir. 2003) ......................................... 4

**STATUTES**

42 U.S.C. § 12111(5)(A) ............................................................................ 4

42 U.S.C. § 12112(d)(2)(A) ..................................................................... 10

**RULES AND REGULATIONS**

Fed. R. Civ. P. 11 .......................................................................... 3, 4, 12

## Statement of Questions Presented

1. Whether the Commission abused the judicial process by filing suit in this ADA case where there is evidence that the Defendant is part of an integrated enterprise having more than 15 employees?

   The Commission answers "No."

2. Whether the Commission abused the judicial process by filing suit in this ADA case where there is evidence that the Defendant's assertion that it fired the Commission's Charging Party because of her medical marijuana usage is pretextual?

   The  Commission answers "No."

v

## **OVERVIEW**

Pines argues that this Americans with Disabilities Act lawsuit is an abuse of the judicial process under Fed. R. Civ. P. 11 because (1) the Defendant does not meet the jurisdictional threshold of 15 employees and (2) the Commission's Charging Party, Jamie Holden, a woman with a seizure disorder, used medical marijuana to treat it. Neither argument has merit.

First, the Defendant is part of an "integrated enterprise" which encompasses several other Pines medical facilities, and thus has more than 15 employees.

Second, the Defendant fired Jamie Holden allegedly for failing to reveal her seizure disorder. Or, at least that is what Pines told the Commission in response to Holden's Charge of discrimination. During the EEOC's investigation, Pines did not tell the Commission that it fired Holden because she used medical marijuana.[1]

**I.   Introduction**

The Commission's Charging Party, Jamie Holden is a LPN who

---

[1] The Commission responded to the Defendant's proposed motion with a letter addressing both of its claims. *See* Ex. H. Consequently, it will be seeking reimbursement of reasonable fees and costs for having to respond to this motion.

suffers from epilepsy, which was diagnosed at age 10. Ex. I, Holden Dep. at 49. Holden applied for an open site manager/administrator position at the Defendant's then-new Clarkston location.[2] She was twice interviewed by owner and district manager Randy Legault. Ex. I at 43-46, 111-13, Ex. F, Legault Dep. at 21-24, 34-40. Legault then sent Holden for a medical examination. Ex. F at 49. During the examination, she disclosed to the doctor that she had a valid medical marijuana card issued legally under Michigan law, and used medical marijuana to treat her seizure disorder. Ex. J, Medical Report. The doctor cleared Holden to return to work pending completion of a tuberculosis examination. Ex. J, Medical Report. During the examination, Holden contacted Legault to let him know that there was going to be a positive result for medical marijuana and that she was taking the medication for a seizure disorder. Ex. I at 121. Legault told her to report to the Pines of Burton the next day. Ex. I at 123-24; Ex. F at 58. After she arrived Holden met with both Legault and Robin Gepfrey. Ex. F. at 71, 78-86. Gepfrey is

---

[2] The Defendant is part of a chain of assisted care facilities for the elderly, with multiple locations in Clarkston, Burton, Fenton and Goodrich. Pines has both assisted-living and memory-care facilities in Burton. Currently, Pines is in the process of opening a memory care facility in Clarkston.

2

another of defendant's owners and a district manager for other Pines locations. During the meeting, Gepfrey, a registered nurse, quizzed Holden extensively on her seizure disorder and expressed doubts that Holden could do the job. Ex. I at 125-30; Ex. E, Gepfrey Interview Notes at 5. Holden was told to go home after the meeting, and two days later was terminated. Ex. I at 137-38; Ex. F at 87, 90.

During the investigation, Defendant provided the Commission with information indicating that it was part of the Pines chain, and also stated that Holden was fired for the "dishonest" failure to disclose her medical limitations. Furthermore, evidence obtained during discovery has bolstered the Commission's case.

II.   **The Commission's Suit Does Not Abuse the Judicial Process.**

Fed. R. Civ. P. 11 motions are not determinations on the merits of the case:

> In assessing whether Rule 11 sanctions should be imposed, the court does not judge the merits of an action. Rather, the court determines "a collateral issue: whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate."

*Safe-Strap Co., Inc. v. Koala Corp.*, 270 F.Supp.2d 407, 417 (S.D.N.Y. 2003) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396

(1990)). They are not intended to be an alternative to other dispositive motions. *Id.* at 416 ("[a] Rule 11 Motion for sanctions is not a proper substitute for a motion for summary judgment").

Rule 11 requires Pines to meet a high threshold:

> A Rule 11 sanction is appropriate when a pleading is frivolous, i.e. both baseless and made without a reasonable and competent inquiry. *See Jackson v. Law Firm of O'Hara, Ruberg, Osborne and Taylor*, 875 F.2d 1224 (6th Cir.1989)….Under this test, "the relevant question is no longer whether the signer subjectively believed that a claim was legitimate. Rather, it is whether a competent attorney …, after appropriate investigation, would have reasonably believed that the claim was well grounded in fact and law." *Holling v. United States*, 1995 WL 871257 *3 (E.D.Mich.1995) (quoting *Kenna v. United States Dep't of Justice*, 128 F.R.D. 172, 176 (D.N.H.1989) (citing cases)). *See also Business Guides, Inc. v. Chromatic Communications Enters., Inc.*, 498 U.S. 533, 553, 111 S.Ct. 922, 934, 112 L.Ed.2d 1140 (1991) (stating that "[t]he relevant inquiry is whether a specific filing was, if not successful, at least well founded.").

*Knestrick v. IBM Corp.*, 945 F. Supp. 1080, 1082 (E.D. Mich. 1996). Moreover, Rule 11 motions "must be read in light of concerns that it will spawn satellite litigation and chill vigorous advocacy." *Tahfs v. Proctor*, 316 F.3d 584, 594-95 (6th Cir. 2003).

As the evidence demonstrates, the Commission has not abused the judicial process in filing this suit.

4

## III. The Pines of Clarkston is Part of an Integrated Enterprise.

The Americans with Disabilities Act covers employers with 15 or more employees. 42 U.S.C. § 12111(5)(A). To calculate the number of employees, an employer may be considered part of an "integrated enterprise":

> In determining whether to treat two entities as a single employer, courts examine the following four factors: (1) interrelation of operations, i.e., common offices, common record keeping, shared bank accounts and equipment; (2) common management, common directors and boards; (3) centralized control of labor relations and personnel; and (4) common ownership and financial control.

*Harrell v. Del. N. Cos. & Sportservice Food Serv.*, No. 11-15557, 2012 U.S. Dist. LEXIS 143031 (E.D. Mich. Oct. 3, 2012) at *9-*10 (quoting *Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990, 993-94 (6th Cir. 1997)). However, not all factors need to be present to show that an integrated enterprise exists:

> While each factor is indicative of interrelation and while control over the elements of labor relations is a central concern, the presence of any single factor in the Title VII context is not conclusive. All four criteria need not be present in all cases and, even when no evidence of common control of labor relations policy is presented, the circumstances may be such that the Title VII single-employer doctrine is applicable.

*Armbruster v. Quinn*, 711 F.2d 1337-38 (6th Cir. 1983) (citation omitted).

All four factors are present here.

5

Regarding interrelated operations, Defendant pointed the Commission to the following webpage, with all of the Pines locations as members of "Pines Living": http://www.pinesliving.com.³ In addition, correspondence from owner Randy Legault to the Commission indicated that Clarkston was part of the Pines group (Ex. A). The Defendant sent paperwork to the Commission from multiple Pines locations, and also produced fill-in-the-blank human resource forms used at multiple facilities requiring only the input of that particular location. Ex. B. The letter enclosing Ms. Holden's one paycheck also identified the Pines as a group, providing the website. Ex. C.

There are two district managers responsible for the Pines locations, Legault and Gepfrey. Ex. F, Legault Dep. at 138-39. Legault testified that district managers set the salaries at each supervised location. *Id*. at 130. He acknowledged that all of the locations use a common stationery, website and toll-free contact number. *Id*. at 117, 169-70. In fact, Legault sent Respondent's position statement to the Commission using a "Pines of Burton" envelope. *Id*. at 155. He

---

³ The original website url was http://www.pinesassistedliving.com. However this now automatically re-routes to http://www.pinesliving.com.

confirmed that fill-in-the-location forms are used at the various Pines locations, and are designed to be used at multiple locations. *Id*. at 129-30. Patients can transfer as needed between locations. *Id*. at 118. All Pines locations use ADP to process their payrolls. Ex. F, Legault Dep. at 120.

With respect to common management, each location is supervised by either Legault or Gepfrey and both will cover for each other's absences, managing the other's sites as well as their own. Ex. G, Gepfrey Dep. at 57.

In fact, they have switched control of locations between them, including the Clarkston location, which Gepfrey started managing in 2012. Ex. G, Gepfrey Dep. at 7-8. Legault stated in his interview with the Commission's investigator that the first Pines location opened in 2001 and Clarkston opened on June 26, 2011. Ex. D, Legault Interview Notes, p. 1. He also stated that he had been an "Operating Director" since the first location opened in Fenton. *Id.*

Robin Gepfrey told the Investigator that she had worked at the Pines since 2006 and had overseen the Lapeer site before taking over Clarkston in January 2012. Ex. E, Gepfrey Interview Notes at 1. She

7

also indicated that there were seven Pines locations during her interview. *Id.*

Ultimately, it is clear that, counted together, there are more than 15 employees working for the Pines locations. Ex. F., Legault Dep. at 134-35 (estimating 10 to 14 employees at each of the five locations). Thus, the Pines system has at least 50 employees.

There is also a centralized labor relations and personnel policy. For example, there is a common random drug screen policy for all locations. *Id.* at 226. Collectively, the Pines are covered by the Family and Medical Leave Act. Ex. G, Gepfrey Dep. at 60.

In addition, there is some evidence that employees can be transferred between locations at need: Legault brought down Andrea Flood, the site manager for the Burton location, to help with the start-up at Clarkston. *Id.* at 226-28.

With respect to common ownership, Legault testified that he has ownership interests in the five Pines locations, as well as seats on the boards of each. Ex. F, Legault Dep. at 115. Gepfrey also has ownership interests in the same locations. *Id.* at 115-16.

All of this data demonstrates this is an integrated enterprise with

8

more than 15 employees. Consequently, the Defendant's motion is without merit as to the jurisdictional claim.

### IV. Pines Fired Holden Because of Her Disability, Not Medical Marijuana Use, and Its Current Policy Argument is a Pretext.

In its position statement, the Pines stated the reason for discharge as follows:

> Our decision not to continue Jamie's [sic] was only based on her dishonesty and lack of judgment that could affect the operation she was hired to oversee[4] and her decision making abilities. Jamie's decision to take medications that she feels best suit her for her ailments is strictly her decision.

Ex. E.

Currently, Defendant claims it has an unwritten zero-tolerance corporate policy barring marijuana use. Ex. F, Legault Dep. at 87-89. However, Legault acknowledged that he did not mention the unwritten zero-tolerance policy to the Commission. *Id.* at 165. According to the interview notes of the EEOC investigator, neither Legault nor Gepfrey mention this policy. Exs. D and E.

In addition, the Defendant frankly admitted that it expects

---

[4] As an aside, this particular formulation—"the operation she was hired to oversee"—also tends to undercut Defendant's current claim that it did not hire Holden.

9

applicants to reveal medical conditions and medications during interviews. Ex. F, Legault Dep. at 228-29 ("I would think it would be the honest thing to say. It would be something you would be up front with"). Requiring this type of medical information at a pre-offer interview is a violation of the ADA. *See* 42 U.S.C. § 12112(d)(2)(A).

Legault's testimony explains the "dishonesty" concerns set forth in the position statement: the Defendant's problem with Holden was her failure to volunteer her disability during the interview process, saving it the trouble of extending an offer to hire her. Unfortunately for Defendant, this expectation is itself improper, and contrary to the prohibitions on pre-offer inquiries into the applicant's health.

Perhaps the most telling evidence against the newly-raised zero-tolerance policy argument is Defendant's behavior subsequent to being notified about Holden's use. Instead of firing her on the spot, Legault brought her in for a discussion with himself and Registered Nurse Robin Gepfrey. During that meeting registered nurse Gepfrey demonstrated that the Defendant was far more concerned with Holden's seizures than marijuana. Gepfrey grilled Holden extensively about Holden's seizure disorder, its triggers and Holden's limitations, and

10

expressed doubts that Holden could do the administrator job. Ex. E, Gepfrey Interview Notes. Further, Gepfrey admitted that she did so. *See* Ex. G, Gepfrey Dep. at p. 89 (stating that she had no specific objections as to the accuracy of the Investigator's interview notes). Instead, the Defendant fired her shortly after this meeting.

> Thus, this new rationale is a changed one suggestive of pretext:
>
> An employer's changing rationale for making an adverse employment decision can be evidence of pretext. Shifting justifications over time calls the credibility of those justifications into question. By showing that the defendants' justification for firing him changed over time, [plaintiff] shows a genuine issue of fact that the defendants' proffered reason was not only false, but that the falsity was a pretext for discrimination.

*Cicero v. Borg-Warner Automotive, Inc.*, 280 F.3d 579, 592 (6th Cir. 2002) (citations omitted).

Ultimately, Defendant's attempt to bootstrap its new rationale for discharge into a finding that the Commission abused the judicial process should be rejected.

## V. Conclusion

Pines has not carried its burden of showing that this lawsuit abuses the judicial process. Pines has more than 15 employees and it fired Holden because of her disability. Consequently, the lawsuit is not

unreasonable, was not brought without appropriate investigation, and it is, in fact, well-grounded in fact. The Commission respectfully requests that the Defendant's motion be denied.

Furthermore, since the Defendant insisted upon proceeding with this motion despite the Commission presenting its case via a letter fairly detailing its position, the EEOC also requests reasonable fees and costs under Fed. R. Civ. P. 11(c)(2) for having to respond to the motion.

                                            Respectfully submitted,

                                            EQUAL EMPLOYMENT
                                            OPPORTUNITY COMMISSION

Dated: October 14, 2014              /s/ Dale Price
                                            DALE PRICE (P55578)
                                            Trial Attorney

                                            DETROIT FIELD OFFICE
                                            Patrick V. McNamara Building
                                            477 Michigan Avenue, Room 865
                                            Detroit, Michigan 48226
                                            (313) 226-7808/-6584 (fax)

## Index of Exhibits

Exhibit A  Legault Correspondence

Exhibit B  Defendant Human Resource Forms

Exhibit C  Letter to Holden

Exhibit D  Legault Interview Notes

Exhibit E  Gepfrey Interview Notes

Exhibit F  Legault Deposition Excerpts

Exhibit G  Gepfrey Deposition Excerpts

Exhibit H  EEOC Correspondence

Exhibit I  Holden Deposition Excerpts

Exhibit J  Medical Report

## CERTIFICATE OF SERVICE

Dale Price certifies that he caused the

**PLAINTIFF EQUAL EMPLOYMENT OPPORTUNITY COMMISSION'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SANCTIONS UNDER FED. R. CIV. P. 11**

to be served upon the parties of record by filing the same via the Eastern District of Michigan Electronic Case Filing system on October 14, 2014.

                                      __/s/ Dale Price_____
                                      Dale Price

Dated: October 14, 2014