UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EEOC, JAMIE HOLDEN,

                Plaintiffs,

                                  CASE NO. 13-CV-14076

v.                              HONORABLE GEORGE CARAM STEEH

THE PINES OF CLARKSTON,

                Defendant.

_____/

**ORDER DENYING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT (Doc. 32)**

In this disability discrimination case brought under the American's with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, plaintiff Equal Employment Opportunity Commission ("EEOC") alleges that defendant, assisted living facility The Pines of Clarkston, terminated Jamie Holden as a nursing administrator on the basis of her epilepsy.[1]  Holden intervened and filed her own two-count complaint alleging that her discharge violated the ADA and Michigan's Persons With Disabilities Civil Rights Act, ("PWDCRA") Mich. Comp. Laws § 37.1101 *et seq.*  Now before the court is defendant's motion to dismiss or for summary judgment on the grounds that (1) it is not an employer within the meaning of the ADA because it employed less than 15 employees at the time that it failed to hire or terminated Holden, and (2) it had a legitimate reason for its

---

[1]Defendant contends that it never hired Holden, but does not argue that the court's analysis differs depending on whether plaintiffs' claim is for discriminatory discharge or failure to hire; thus, the court uses the terms interchangeably.

-1-

employment decision as Holden failed a pre-employment drug test. Because defendant admitted that it employed at least 15 employees and was a covered "employer" within the meaning of the ADA in its pleadings, and because a genuine issue of material fact exists as to whether defendant had a legitimate reason for terminating her, defendant's motion for summary judgment shall be denied.

## I. Background

In July, 2011, Holden, a licensed practical nurse, applied for a position with The Pines of Clarkston to work as an administrator. (Doc. 38, Ex. 1 at 42-43). Holden interviewed with Randy Legault, owner and district manager of The Pines of Clarkston in late July, 2011 and again in early August of that same year. *Id.* at 44, 111. Holden alleges that she was hired on August 8, 2011. (Doc. 8 at ¶ 8). On her second day of employment, she was required to undergo a medical examination and to take a drug test. (Doc. 38, Ex. 1 at 119). Holden uses medical marijuana for her epilepsy. *Id.* at 121. The results of the drug test were positive. (Doc. 32, Ex. 10). Holden discussed the test results with Legault and explained that she used medical marijuana for her epilepsy. (Doc. 38, Ex. 1 at 121). The next day, on August 10, 2011, Holden met with Legault and with Robin Gepfrey, another of defendant's owners, who was district manager of The Pines of Lapeer at that time. *Id.* at 125. The three met at the Pines of Burton, another Pines assisted living facility. According to Holden's complaint, Gepfrey questioned her about her epilepsy and told her at the conclusion of the interview meeting that she did not believe that Holden could perform the job. (Doc. 8 at ¶¶ 12-13). Holden was instructed not to return to work until a decision regarding her employment was made. *Id.* at ¶ 14. According to Holden's

-2-

deposition, Legault left a voice mail on her home phone several days later advising her that her services were no longer needed.  (Doc. 38, Ex. 1 at 137-38).

The complaint filed by the EEOC alleges that "[a]t all relevant times, Defendant The Pines of Clarkston, Inc. (the "Employer") . . . has continuously had at least 15 employees." (Doc. 1 at ¶ 4).  In its answer, filed on November 18, 2013, defendant admitted that it had at least 15 employees.   (Doc. 9 at ¶ 4).  Similarly, Holden's intervening complaint alleged that defendant "has been an employer within the meaning of the Americans with Disabilities Act of 1990 (ADA), 42 USC § 12111."   (Doc. 8 at ¶ 2).  In its answer to the intervening complaint, filed on January 23, 2014, defendant admitted that it was an employer within the meaning of the ADA.  (Doc. 12 at ¶ 2).

Discovery in this case closed on July 31, 2014.  The dispositive motion cut-off date was September 2, 2014, and the trial of this matter was scheduled for December 22, 2014. After the dispositive motion cut-off date had expired, on September 26, 2014, defendant filed a Rule 11 motion for sanctions seeking dismissal on the basis that plaintiffs' claims were allegedly frivolous.  The court summarily denied that motion but granted defendant's motion to extend the scheduling order to allow it to file a dispositive motion.  (Doc. 31). Neither party sought additional discovery and the discovery period remained closed.

At the time defendant made the adverse decision regarding Holden's employment, there were five assisted living centers bearing the "Pines" name: defendant The Pines of Clarkston, The Pines of Burton, The Pines of Lapeer, The Pines of Swartz Creek, and The Pines of Lake Fenton.  Plaintiffs also allege that defendant is an "employer" under the ADA under the "integrated enterprise" doctrine which, if applicable, would allow plaintiffs to aggregate employees of some or all of the other Pines facilities to meet the threshold

-3-

number required for liability under the ADA.  *Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990, 993 (6th Cir. 1997).  Because the court finds that defendant is bound by its judicial admissions that it is an "employer" under the ADA, the court does not recite here the facts germane to that inquiry.

## II. Standard for Summary Judgment

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *See Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001).  The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice.  The procedure is not a disfavored procedural shortcut.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary

-4-

judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. *McLean*, 224 F.3d at 800 (*citing Anderson*, 477 U.S. at 252).

### III. Analysis

#### A.    The Numerosity Requirement

In order to qualify as a covered "employer" under the ADA, the defendant must employ "15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 12111(5)(A).[2] Proving the threshold number of employees to be considered an "employer" within the meaning of the ADA is an element of a plaintiff's claim for relief and is not jurisdictional. *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 516 (2006) ("the threshold number of employees for application of Title VII is an element of a plaintiff's claim for relief, not a jurisdictional issue."). Although *Arbaugh*

---

[2]Under Michigan's PWDCRA, an employer is defined as an entity than employs one or more employees. Mich. Comp. Laws § 37.1201(b).

applied to Title VII, not the ADA, the Sixth Circuit has relied on case law interpreting Title VII to decide ADA issues based on the similarities between the statutes.  *Swallows,* 128 F.3d at 992 n.2 ("Because Title VII, the ADEA, and the ADA define 'employer' essentially the same way, we rely on case law developed under all three statutes." (internal quotations marks omitted)).  In addition, other courts have applied *Arbaugh* to ADA claims, ruling that the numerosity requirement is a nonjurisdictional element of the claim.  *Reynolds v. Nat'l American Red Cross*, 701 F.3d 143, 155 (4th Cir. 2012); *Dalton v. Manor Care of West Des Moines*, 986 F. Supp. 2d 1044, 1053 (S.D. Iowa 2013); *see also Minard v. ITC Deltacom Comm.*, 447 F.3d 352, 356 (5th Cir. 2006) (applying *Arbaugh* to FMLA claims).  Thus, while defendant could not consent to subject matter jurisdiction, it could admit to one of the nonjurisdictional elements of plaintiffs' ADA claim.  That is exactly what happened here when defendant admitted that it employed at least 15 employees in answer to the EEOC's complaint, and admitted that it was a covered "employer" under the ADA in its answer to the intervening plaintiff's complaint.

The Sixth Circuit has held that "[j]udicial admissions eliminate the need for evidence on the subject matter of the admission, as admitted facts are no longer at issue."  *Ferguson v. Neighborhood Hous. Serv. of Cleveland, Inc.*, 780 F.2d 549, 550-51 (6th Cir. 1986) (internal quotation marks and citations omitted).  Absent exceptional circumstances, admissions in pleadings should not be reopened.  *Id.* at 551.  In *Ferguson*, the Sixth Circuit ruled that the employer's admission that it was a covered entity under the Fair Labor Standards Act in its answer, was a binding admission, and affirmed the district court's refusal to allow the employer to file an amended answer shortly before trial was to begin to contest its status as "employer" under the Act.  *Id.*  The same result as occurred in

-6-

*Ferguson* is required here.  Defendant shall be bound by its admissions in not one, but two pleadings filed in this case, admitting that it employed at least 15 employees at the time of the adverse employment decision and was a covered "employer" under the Act.  *See also Keller v. United States*, 58 F.3d 1194, 1198 n.8 (7th Cir. 1995) ("Judicial admissions are formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding upon the party making them. . . A judicial admission is conclusive, unless the court allows it to be withdrawn; ordinary evidentiary admissions, in contrast, may be controverted or explained by the party.").

Defendant argues that it should not be bound by its admissions in its answer because it alleged that it employed less than 15 employees in its responses to the EEOC's requests for admissions and in its responses to the EEOC's interrogatories.  Intervening plaintiff Holden, however, conducted no discovery on the issue and relied on defendant's admission that it was an employer within the meaning of the ADA.  (Doc. 38 at 4). Moreover, judicial admissions are binding unless withdrawn even when contradicted by later produced evidence.  *Grynberg v. Bar S Serv.,* Inc., 527 F. App'x 736, 739 (10th Cir. 2013); *Missouri Hous. Dev'p Comm'n v. Brice*, 919 F.2d 1306, 1314 (8th Cir. 1990); *Davis v. A.G. Edwards & Sons, Inc.*, 823 F.2d 105, 108 (5th Cir. 1986) (per curium).  In *Brice*, the defendant admitted he signed a guaranty agreement in his answer, but later disputed this point in his discovery and deposition responses.  919 F.2d at 1314.  The district court granted summary judgment based on his admission in his answer.  *Id.*  Defendant argued that plaintiff waived its right to rely on the answer by asking him questions about his authorship of the guaranty in interrogatories, a deposition, and a request for admission. *Id.*  The Eighth Circuit rejected this argument, adopting the bright line rule that admissions

-7-

contained in pleadings are binding even where the admitting party later produced evidence contrary to those admissions.  *Id.*

Defendant now seeks to avoid being bound by its own admissions by moving for leave to amend its answers.  Federal Rule of Civil Procedure 15(a) provides that once the time period for amending a pleading as a matter of right has passed, "a party may amend its pleading only with the opposing party's written consent or the court's leave.  A court need not grant leave to amend, however, where amendment would be 'futile.'"  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  "Leave to amend may be denied when it would result in undue delay, prejudice to the opposing party, or repeated failure to cure deficiencies in the [pleading]."  *Phelps v. McClellan*, 30 F.3d 658, 662 (6th Cir. 1994) (citing *Foman*, 371 U.S. at 182).  "Generally, a defendant's failure to deny an allegation in the plaintiff's complaint takes the issue out of the case."  *Id.* (citation omitted).  Moreover, the longer a defendant waits to move to amend its answer, the more prejudice to the plaintiff may be presumed. *Id.*

In this case, discovery closed months before defendant raised the issue denying that it employed 15 workers at the time of the adverse employment decision in its improvidently filed motion for Rule 11 sanctions.  Prior to the close of discovery, the EEOC and Holden were not on notice that they needed to conduct discovery on the numerosity requirement based on defendant's admissions in its pleadings, and Holden did not conduct discovery based on defendant's judicial admissions.  It would be unfair to force plaintiffs to address this new defense without reopening discovery.  But the posture of this case militates against doing so.  This case is not only on the eve of trial, it is months past the eve of trial, because the court granted defendant a significant extension of time for filing its dispositive

motion.  If defendant had sought leave to amend its answers before discovery closed, the outcome here would likely have been in its favor.  Defendant failed, however, to do so. Given the importance of allowing Holden and the EEOC to prosecute their employment discrimination claims expeditiously, and likewise, the court's responsibilities for managing its own docket efficiently, the court does not find that reopening discovery to correct the prejudice to plaintiffs is appropriate at this eleventh hour.  Accordingly, defendant is bound by its admission that it employed the requisite 15 employees at the time of the adverse employment action.[3]

### B.   Disability Discrimination Claims

#### 1.   Defendant's Alleged Non-Discriminatory Reason for its Adverse Employment Action

The EEOC filed this suit alleging disability discrimination under the ADA, and Holden joins in that claim and also alleges disability discrimination in violation of Michigan's PWDCRA.  The Sixth Circuit has held that the PWDCRA "'substantially mirrors' the ADA, and claims under both statutes are generally analyzed identically.'" *Steward v. New Chrysler*, 415 F. App'x 632, 641 (6th Cir. 2011) (quoting *Cotter v. Ajilon Servs., Inc.*, 287 F.3d 593, 597 (6th Cir. 2002)).  The ADA prohibits discrimination against a qualified individual with a disability.  42 U.S.C. § 12101 *et seq.*  A claim for improper termination or failure to hire follows the familiar burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1972).  To establish her *prima facie* case of discrimination,

---

[3]Based on the undue delay and prejudice to plaintiffs, the court does not reach the issue of whether the amendment sought would also be futile under the theory that the five Pines assisted living facilities operated as an "integrated enterprise."

plaintiff must demonstrate that (1) she is disabled, (2) she is otherwise qualified for the position, with or without accommodation, (3) she suffered an adverse employment action; (4) the employer knew or had reason to know of the plaintiff's disability, (5) the position remained open or the individual was replaced. *Whitfield v. Tennessee*, 639 F.3d 253, 258-59 (6th Cir. 2011). Once the plaintiff establishes her *prima facie* case, the burden of production shifts to the employer to come forward with a legitimate non-discriminatory reason for the adverse employment decision. *Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 417 (6th Cir. 2004). Once the employer satisfies its burden, the employee must demonstrate that the proffered reason was, in fact, a pretext for unlawful disability discrimination. *Id.* The Sixth Circuit has recently explained that to establish pretext, a plaintiff must show that the adverse employment discrimination occurred *because* of a disability; in other words, disability discrimination is a "but-for" cause of the adverse employment decision. *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 321 (6th Cir. 2012) (en banc) (rejecting "sole" cause and "motivating factor" tests).

Defendant has not disputed that plaintiffs have established their *prima facie* case. It argues solely that it had a legitimate non-discriminatory reason for failing to hire, or terminating Holden; namely, that Holden failed a drug test due to her marijuana use. While defendant is no doubt correct that discharge for illegal drug use is a permissible non-discriminatory reason, *see* 42 U.S.C. § 12114(a), plaintiffs have introduced evidence creating a genuine issue of material fact as to whether the reason articulated in defendant's motion for summary judgment is pretext. Holden testified at her deposition that during her employment interview with Legault and Gepfrey, Gepfrey grilled her about her epilepsy and told her that she thought the position would be too stressful for her based on her medical

-10-

condition.    (Doc. 38, Ex. 1 at 136, 139).   Notes from the EEOC's investigation and interview of Gepfrey state that she questioned Holden about her epilepsy, including the nature and frequency of her seizures and how she controlled them.   (Doc. 35, Ex. E). Those same interview notes state that Gepfrey's recommendation after meeting with Holden was "[n]ot to hire her for medical issues said (seizures) and didn't feel she could handle the stress."   *Id.*   At her deposition, Gepfrey did not dispute the accuracy of the EEOC interview notes.   (Doc. 38, Ex. 3 at 86).   Similarly, Legault issued a position paper to the EEOC stating that it terminated Holden based on her failure to disclose the medications she takes.   (Doc. 35, Ex. A).   Specifically, Legault described the meeting that he conducted with Holden and Gepfrey on August 10, 2011, after Holden failed her drug test:

> Robin [Gepfrey] and I asked Jamie [Holden] about her medications, at that time she revealed that those medications were for her disorder.   We mentioned to Jamie that her disorder isn't an issue for our company, but the dishonesty of not mentioning these medications were.   How could we trust a manager running an operation for seniors if she isn't honest about herself?

> . . . Our decision not to continue Jamie's [employment] was only based on her dishonesty and lack of judgment that could affect the operation she was hired to oversee and her decision making abilities.   Jamie's decision to take medications that she feels best suit[]s her for her a[i]lments is strictly her decision.

(Doc. 35, Ex. A).   In addition, at his deposition, Legault stated that he would expect an applicant to reveal her medical condition and medications during a job interview.   (Doc. 35, Ex. F at 228-29).   During the EEOC investigation, neither Legault nor Gepfrey mentioned that defendant has a zero-tolerance policy barring marijuana use, and neither stated that Holden was discharged for violating this policy.   (Doc. 35, Ex. D and E).

Here, plaintiffs argue that defendant's argument in its motion for summary judgment that it dismissed Holden for failing her drug test conflicts with Legault's stated rationale to the EEOC that she was terminated for failing to disclose her medications (Doc. 35, Ex. A, D at ¶ 17), or Gepfrey's stated rationale that Holden could not perform the duties of the position given her medical condition.  (Doc. 35, Ex. E at ¶ 18).  "An employer's changing rationale for making an adverse employment decision can be evidence of pretext." *Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1167 (6th Cir. 1996) (citations omitted). Given the record now before the court, a genuine issue of material fact exists as to whether the reason given for Holden's termination was a legitimate non-discriminatory reason, or whether it was pretext for discrimination.

The cases upon which defendant relies in support of its motion for summary judgment do not suggest that this court should alter its conclusions here.  In *James v. City of Costa Mesa*, 700 F.3d 394 (9th Cir. 2012), for example, medical marijuana users sued their municipality for taking steps to close marijuana dispensing facilities alleging that the city's actions amounted to disability discrimination under the ADA.  The Ninth Circuit ruled that plaintiff's use of medical marijuana constituted "illegal use of drugs" as defined under the ADA and was not a protected activity; however, the court stressed that its holding was limited to those employees alleging that their use of medical marijuana constituted a disability.  The court stated:

> We do *not* hold, as the dissent states, that "medical marijuana users are not protected by the ADA in any circumstance."  We hold instead that the ADA does not protect medical marijuana users who claim to face discrimination *on the basis of* their marijuana use.  *See* 42 U.S.C. § 12210(a) (the illegal drug use exclusion applies only 'when the covered entity acts on the basis of such use").

-12-

2:13-cv-14076-GCS-MKM   Doc # 40   Filed 04/29/15   Pg 13 of 15   Pg ID 678

*Id.* at 397, n.3.  In this case, Holden does not allege that she was discriminated against on the basis of her use of marijuana; rather, she alleges that she was terminated because of her epilepsy; thus, the reasoning of *City of Costa Mesa* is irrelevant to the instant dispute and does not entitle defendant to summary judgment.  Likewise, *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 435 (6th Cir. 2012), where the Sixth Circuit held that Michigan's Mari[j]uana Act does not restrict a private employer's ability to discharge an employee for marijuana use, does not address the issue here where Holden claims defendant's proffered reason for her discharge, namely her use of marijuana, is pretext for disability discrimination.  Finally, *Bailey v. Real Time Staffing Servs., Inc.*, 543 F. App'x 520, 524 (6th Cir. 2013) is factually distinguishable as in that case plaintiff could not overcome his employer's stated reason for firing him - failure of a screen for illegal drug use - because plaintiff could not even show that his employer knew he had HIV which was the basis of his ADA claim.   By contrast, in this case, Holden has come forward with evidence that defendant knew of her epilepsy, district managers questioned her about her condition, and Gepfrey told her she did not think Holden could perform the job because of her medical condition.  Under these circumstances, plaintiffs have raised a genuine issue of material fact as to whether Holden was discharged because of her epilepsy.

### 2.      "Honest Belief" Doctrine

Finally, the court considers defendant's argument that it is entitled to summary judgment under the "honest belief" doctrine.  Under that rule, summary judgment may be granted on the basis of an employer's "honestly-believed" reason for taking an employment action, even if that reason is shown to be "mistaken, foolish, trivial, or baseless." *Smith v. Chrysler Corp.*, 155 F.3d 799, 806 (6th Cir. 1998).  "[T]he employer must be able to establish its reasonable reliance on the particularized facts that were before it at the time the decision was made." *Id.* at 807. Once the employer has met its burden, "the employee has the opportunity to produce 'proof to the contrary.'" *Id.* at 807 (quoting *Pesterfield v. TVA,* 941 F.2d 437, 443 (6th Cir. 1991)).  The Sixth Circuit has noted that the "honest belief" doctrine does "not require that the decisional process used by the employer be optimal or that it left no stone unturned," but "it must be reasonably informed and we will not blindly assume that an employer's description of its reasons is honest." *Stewart v. Kettering Health Network*, 576 F. App'x 518, 523 (6th Cir. 2014) (internal quotations and citations omitted).  In this case, plaintiffs have come forward with evidence that defendant employer never told her she was being discharged, or not hired, because of her illegal drug use.  Furthermore, Holden also has introduced evidence that defendant never told the EEOC during their investigation that it terminated her for illegal drug use.  Under these circumstances, plaintiffs have raised a genuine issue of material fact as to whether defendant honestly believed in the reason proffered in its motion for summary judgment that it discharged Holden for using medical marijuana.

**IV. Conclusion**

For the reasons set forth above, defendant's motion for summary judgment (Doc. 32) is DENIED and defendant is deemed an "employer" within the meaning of the ADA.

**IT IS SO ORDERED**.

Dated:  April 29, 2015

s/George Caram Steeh_____
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
April 29, 2015, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk

---

-15-